NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SAMANTHA J., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, W.R., A.R., *Appellees*.

No. 1 CA-JV 19-0235
FILED 11-26-2019

Appeal from the Superior Court in Yavapai County
No. P1300JD201700081
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Kent E. Cattani and Judge James B. Morse Jr. joined.

---

**C R U Z**, Judge:

¶1 Samantha J. ("Mother") appeals the juvenile court's order terminating her parental rights to W.R. and A.R. ("the Children"). Mother argues the juvenile court erred in finding termination was in the Children's best interests. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 W.R. was born in 2015, and A.R. was born in 2017. The Children first became subjects to a dependency action in 2017 when Mother allegedly assaulted the Children's maternal grandmother and was arrested for driving under the influence of alcohol with the Children in the car. The Children were temporarily placed with their maternal grandfather. Mother participated in services as recommended by the Department of Child Safety ("DCS") and the Children were reunified with Mother. That dependency case was dismissed in May 2018.

¶3 Less than a year later, the Department of Public Safety ("DPS") stopped Mother's car for a cracked windshield. Mother became combative and was arrested. DPS officers discovered the Children were not properly strapped into their car seats, were filthy, and were "soaked in urine." When officers changed the Children's diapers, officers found both Children had severe diaper rash and transported the Children to Phoenix Children's Hospital. Medical staff described the diaper rashes as a "chemical burn," and diagnosed A.R. with cellulitis and prescribed a strong antibiotic. Upon searching Mother's car, officers found methamphetamine and a pipe. Hair follicle test results for both Children were positive for methamphetamine. Mother faced several charges, including child abuse.

¶4 DCS filed a second dependency petition, citing Mother's substance abuse and the Children's injuries, and placed the Children with their maternal grandfather. Approximately one month after Mother's arrest, DCS moved to terminate Mother's parental rights on the grounds of

neglect, history of chronic substance abuse, and prior removal.[1] *See* Arizona Revised Statutes ("A.R.S.") section 8-533(B)(2), (3), (11). Mother did not contest the statutory grounds for termination, and the parties agreed to a hearing limited to the issue of the Children's best interests. At the termination adjudication hearing, the juvenile court found that terminating Mother's parental rights was in the Children's best interests.

**¶5**     Mother timely appealed. We have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9; A.R.S § 8-235(A); and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## DISCUSSION

**¶6**     Mother appeals the juvenile court's finding that termination of her parental rights was in the Children's best interests. We do not reweigh evidence on appeal, and we will affirm the court's factual findings if supported by reasonable evidence. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20 (2000). We view facts "in a light most favorable to affirming the trial court's findings." *In re Maricopa Cty. Juv. Action No. JS-8490*, 179 Ariz. 102, 106 (1994).

**¶7**     A parent's right in the care, custody, and management of her children is fundamental, but not absolute. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). To terminate parental rights, a court engages in a two-step inquiry. The court must first find by clear and convincing evidence a statutory ground for termination, and then must find by preponderance of the evidence that termination is in the children's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018); *see Kent K.*, 210 Ariz. at 288, ¶ 42; A.R.S. §§ 8-533(B), -537(B). In the best-interests analysis, the children's interest in stability and security is the court's chief concern. *Alma S.*, 245 Ariz. at 150, ¶ 12. Termination is in the children's best interests if DCS demonstrates the children will benefit from termination or if the children will be harmed if termination is denied. *Id.* at ¶ 13; *Demetrius L.*, 239 Ariz. at 4, ¶ 16. Benefits to the children may include prospective adoption or stability in an existing placement. *Id.*; *Dominque M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 8 (App. 2016); *see Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004) ("The best interest requirement may be met if . . . the petitioner proves that a current adoptive

---

[1]     DCS also requested the juvenile court terminate the parental rights of the Children's respective fathers, who are not parties to this appeal.

plan exists for the child, or even that the child is adoptable." (citations omitted)).

**¶8** Mother argues that DCS failed to show that termination was in the best interests of the Children because the Children "have a very strong bond with Mother" and she had been their primary caregiver "most of their lives." The juvenile court may consider the bond between children and their biological parent, but such a bond is not dispositive in a best-interests inquiry. *See Dominique M.*, 240 Ariz. at 98, ¶ 12. Mother's argument asks us to reweigh evidence considered by the juvenile court; we will not do so.

**¶9** Mother also accuses DCS of rushing to termination without providing Mother an opportunity to participate in services or considering that Mother had "a chance" of being released from jail soon. Mother cited her previous success in reuniting with the Children following the first dependency. Although Mother had successfully completed services and reunited with the Children following the first dependency action, the juvenile court had to consider the "totality of the circumstances existing at the time" of the termination adjudication hearing. *Alma S.*, 245 Ariz. at 150-51, ¶ 13 (citing *Dominique M.*, 240 Ariz. at 98, ¶¶ 11-12); *see also Demetrius L.*, 239 Ariz. at 4, ¶ 15 ("[I]n considering best interests, the court must balance the unfit parent's 'diluted' interest 'against the independent and often adverse interests of the child in a safe and stable home life.'" (quoting *Kent K.*, 210 Ariz. at 286, ¶ 35)). These circumstances include a parent's efforts to rehabilitate. *See Alma S.*, 245 Ariz. at 151, ¶ 15. But once a parent has been determined unfit under A.R.S. § 8-533(B), courts "must not . . . subordinate the interests of the child to those of the parent." *Id.*

**¶10** Within eighteen months of Mother reuniting with the Children, the Children required treatment for what the juvenile court called "the most severe diaper rash this court has ever seen" and tested positive for methamphetamine. The court found that the Children were living in an adoptive placement with their maternal grandfather, who could provide a "loving, drug-free home." *See Mary Lou C.*, 207 Ariz. at 50, ¶ 19. These factors provide reasonable evidence to support the juvenile court's determination that termination was in the Children's best interests.

## CONCLUSION

¶11      For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights to W.R. and A.R.



AMY M. WOOD • Clerk of the Court
FILED:  AA